**DANNHEIM DEVELOPMENT, INC., Appellant,**

v.

**Maynard MOGLER, Respondent.**

No. C1–87–502.

Court of Appeals of Minnesota.

Sept. 22, 1987.

William M. Schade, Somsen, Dempsey & Schade, New Ulm, for appellant.

Daniel A. Birkholz, St. James, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Dannheim Development, Inc. appeals from a February 19, 1987 order vacating a January 29 preliminary attachment order and claims the trial court erred because respondent Maynard Mogler's sale of his one-third partnership interests in Bridge Street Partnership and Bridge Street Limited Partnership, and the subsequent assignment of the proceeds of the sale to the State Bank of Darfur, was made with an intent to delay or defraud his creditors. We affirm.

## FACTS

On August 1, 1975, Emmett Erpelding and respondent Maynard Mogler signed a partnership agreement forming Bridge Street Partnership with Donald Dannheim and Gerald Dannheim, and further providing that each party had the first option to buy the other's interest.

On June 1, 1980, Mogler executed a promissory note to Gerald Dannheim for $300,000. In October 1985 Gerald Dannheim transferred his interest in the note to appellant Dannheim Development, Inc., (Dannheim) of which he is the president. On October 31, 1986, Dannheim sued Mogler on the note seeking $262,500, interest, and attorney's fees.

On December 13, 1986, Mogler entered into an agreement to transfer his one-third ownership interest in Bridge Street Partnership and Bridge Street Limited Partnership to Erpelding upon payment of $1,500 per month for a period of ten years. Mogler was free to assign the monthly payments to any person or entity.

Shortly after December 13, 1986, Mogler attempted to assign all of his rights in the contract with Erpelding to Darfur State Bank to which he was indebted in the approximate amount of $40,000, which had been borrowed to purchase a computer valued at $60,000. The computer was pledged as collateral to secure the loan. Mogler also pledged his interest in Parranto/Lafayette Limited Partnership to the bank as security for the loan. In February 1987 Mogler's interest in the partnership had a negative net asset value. However, it was estimated that by 1988 the estimated value would be between $20,000 and $22,000.

On January 29, 1987, Dannheim applied to the trial court for a preliminary attachment order pursuant to Minn.Stat. § 570.-025 (1986) claiming Mogler assigned, disposed of or sold property with intent to defraud or delay his creditors. Dannheim pointed to Mogler's transfer or sale of his interest in the Bridge Street Partnership to

Erpelding and the subsequent attempted assignment of the proceeds from the sale to Darfur State Bank. The trial court issued a preliminary attachment order directing the sheriff of Dakota County to attach any of Mogler's nonexempt property.

At the subsequent hearing on the preliminary attachment order, Mogler stated that there were outstanding judgments against him amounting to approximately $1,900,000 and that in the past six years he has not committed any acts or disposed of any assets for purposes of defrauding or defeating any rights of creditors, including Gerald Dannheim. Mogler stated that the sale of his interest in the partnership to Erpelding was merely a business decision to get out of the partnership.

The court then vacated the preliminary attachment order finding a conveyance which prefers one creditor over another is not a basis for an attachment.

A judgment was subsequently entered in favor of Dannheim on the promissory note for $412,396.57.

Dannheim appeals from the order vacating the preliminary attachment order.

### ISSUE

Did the trial court err in vacating the preliminary attachment order?

### ANALYSIS

■ Dannheim claims the trial court erred in vacating the preliminary attachment. To obtain or sustain an attachment pursuant to Minn.Stat. § 570.02, subd. 1(1),[1] Dannheim was required to show Mogler had an actual personal intent to delay or defraud creditors. Whether that intent exists is a question of fact for the trial court. *Reiling v. Wood*, 202 Minn. 576, 578, 279 N.W. 579, 580 (1938).

Dannheim claims Mogler's intent to defraud his creditors may be inferred from the facts and the application thereto of the language of Minn.Stat. §§ 513.22 and .23 (1986).[2]

■ Dannheim asserts the facts from which fraud may be inferred are these: Mogler was insolvent at the time he made the assignment to the bank and the assignment was without fair consideration because the bank already had adequate security for Mogler's outstanding indebtedness, including the computer worth $60,000 at the time of purchase and his interest in the Parranto/Lafayette Limited Partnership. We note that it is unclear what the present value of the computer is and the limited partnership as of February 1987 had a negative asset value.

■ Although one may question Mogler's assignment of the proceeds from the sale of his partnership interest to the bank for purposes of providing additional collateral for a prior loan, especially in light of the timing of the assignment and the fact the proceeds from the sale could greatly exceed Mogler's indebtedness to the bank, because of Mogler's testimony denying that he has disposed of any assets to defraud or defeat creditors, Dannheim has not sufficiently shown Mogler's assignment was intended to defraud or delay his

1. Minn.Stat. § 570.02, subd. 1(1) (1986) provides:

> Subdivision 1. Grounds. An order of attachment which is intended to provide security for the satisfaction of a judgment may be issued only in the following situations:
>
> (1) when the respondent has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of the respondent's nonexempt property, with intent to delay or defraud the respondent's creditors;

2. Minn.Stat. § 513.22 (1986) provides:

> Fair consideration is given for property, or obligation,
>
> (1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> (2) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Minn.Stat. § 513.23 (1986) provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to the person's actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

creditors. A preferential transfer of property alone, without an intent to defraud or delay creditors, is not sufficient to sustain an attachment. *See generally Larson v. Soller,* 167 Minn. 181, 208 N.W. 759 (1926); *Crookston State Bank v. Lee,* 124 Minn. 112, 144 N.W. 433 (1913). We must therefore conclude the trial court's finding that the assignment or conveyance was *not* made with an intent to defraud was not manifestly contrary to the evidence and is not clearly erroneous. *See* Minn.R.Civ.P. 52.01; *see generally Kuske v. Jevne,* 173 Minn. 584, 218 N.W. 99 (1928); *Sweeney v. McMahon,* 145 Minn. 334, 177 N.W. 361 (1920).

## DECISION

The trial court's finding that the assignment or conveyance was not made with an intent to defraud and the vacation of the January 29 attachment order were not manifestly contrary to the evidence.

Affirmed.